**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GWENLYN D. DIKEMAN,

        Plaintiff-Appellant,

v.

WILLIAM A. HALTER, * Acting
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 00-5111

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CV-252-M)**

---

Submitted on the briefs:

Michael D. Clay, Tulsa, Oklahoma, for the Plaintiff-Appellant.

Stephen C. Lewis, United States Attorney, Cathryn McClanahan, Assistant United
States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma; Tina M.
Waddell, Chief Counsel, Region VI, Mark J. Kingsolver, Deputy Chief Counsel,
Cicely S. Jefferson, Assistant Regional Counsel, Office of the General Counsel,
Dallas, Texas, for the Defendant-Appellee.

---

\*     On January 20, 2001, William A. Halter became the Acting Commissioner
of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Halter is substituted for Kenneth S. Apfel as the
appellee in this action.

Before **EBEL**, **PORFILIO**, and **LUCERO**, Circuit Judges.

**EBEL**, Circuit Judge.

Plaintiff applied for social security disability benefits in February 1996, claiming she had been disabled since November 1995 due to chronic obstructive pulmonary disease. Plaintiff also suffers from right foot drop. The administrative law judge (ALJ) determined at step five of the familiar sequential analysis that plaintiff was not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff sought review of the Commissioner's decision before the district court, which affirmed the decision. Plaintiff now appeals, arguing that the ALJ's finding that she acquired skills in her past relevant work that are transferable to other jobs within her residual functional capacity is not supported by substantial evidence.

We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. [1] "We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (citation and quotation omitted). Because we conclude that the Commissioner's decision is not supported by substantial evidence, we reverse and remand for further proceedings.

In pursuing her claim for benefits, plaintiff bore the initial burden of demonstrating that she had one or more severe impairments that made her unable to perform her past relevant work. Plaintiff met this burden. The ALJ found that her chronic obstructive pulmonary disease and right foot drop left her with a residual functional capacity (RFC) for only a limited range of sedentary work, and that she could not perform any of her past relevant work with this RFC. At that point, the burden shifted to the Commissioner to establish that plaintiff could perform other jobs in the national economy, considering her RFC, age, education, and past work experience. *Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th Cir. 1991); 20 C.F.R. § 404.1520(f).

"As age is one of the factors that must be considered, it should surprise no one that the [Commissioner] faces a more stringent burden when denying disability benefits to older claimants." *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If the claimant is under the age of fifty, the Commissioner "do[es] not consider that [the claimant's] age will seriously affect [her] ability to

adapt to a new work situation." 20 C.F.R. § 404.1563(b). If the claimant is "closely approaching advanced age (50-54), [the Commissioner] will consider that [her] age, along with a severe impairment and limited work experience, may seriously affect [her] ability to adjust to a significant number of jobs in the national economy." *Id.* § 404.1563(c). The acquisition of skills that are transferable to other work, however, gives a claimant "a special advantage over unskilled workers in the labor market." Soc. Sec. Rul. 82-41, 1982 WL 31389, at *2 (1982).

Accordingly, the ALJ can find that a younger claimant who has a high school education and can perform sedentary work is not disabled even if the only work she can perform is unskilled. *See* 20 C.F.R., Pt. 404, Subpt. P. App. 2, § 201.21. To find that same claimant not disabled when she is closely approaching advanced age, however, the ALJ must also find that the claimant acquired skills in her past work that are transferable to other skilled or semi-skilled jobs. *See id.* §§ 201.14, 201.15.

Plaintiff was born in November 1943 and was fifty-three years old at the time of the hearing, so she was closely approaching advanced age. She has a high school education and had been employed by Homeland Stores for thirty-four years in various capacities, including management, file maintenance, checker, and stocker. The ALJ found that plaintiff acquired skills in her past work as

-4-

a checker that were transferable to other semi-skilled cashiering jobs within her RFC. This finding was critical to the ALJ's determination that plaintiff was not disabled, and it is this finding that plaintiff challenges.

The Commissioner has defined a skill as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery.

Soc. Sec. Rul. 82-41, 1982 WL 31389, at *2. A skill cannot be acquired by performing an unskilled job, and a person who has acquired skills that are not transferable to other jobs "has no special advantage." *Id.*

An ALJ can find a claimant's acquired skills are transferable to other jobs "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1). "Transferability is most probable and meaningful among jobs in which – (i) The same or a lesser degree of skill is required; (ii) The same or

similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." *Id.* § 404.1568(d)(2).

In determining whether a claimant's past relevant work was semi-skilled and whether the claimant acquired transferable skills from that work, the Commissioner has cautioned ALJs to pay "close attention . . . to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work," because "[e]ven though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled." Soc. Sec. Rul. 82-41, 1982 WL 31389, at *2. Indeed, jobs at the lower level of semi-skilled work may not produce any transferable skills, and even jobs at the higher level of semi-skilled work may involve many tasks that "do not provide a special advantage over unskilled workers." *Id.* at *3.

When an ALJ makes a finding that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable. *Id.* at *7; *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988). The ALJ's "[f]indings should be supported by appropriate documentation." Soc. Sec. Rul. 82-41, 1982 WL 31389, at *7. "Neither an occupational title by itself nor a skeleton description [of a job] is

sufficient" to document the claimant's acquisition of skills. *Id.* at *4. "Job titles, in themselves, are not determinative of skill level." *Id.*

The record here contains little, if any, evidence of plaintiff's transferable skills. In the portion of the disability report relating to past work, plaintiff wrote that her past work was "Homeland for 34 years. Management. File maintenance. 'Stocker.' Checker." Appellant's App., Vol. II at 94. Plaintiff did not indicate when or for how long she performed any of these jobs. Without differentiating among these jobs, plaintiff stated that she did not use machines, tools or equipment of any kind, that she did use technical knowledge or skills, that she did not do any writing, complete any reports, or do similar duties, and that she did have supervisory responsibilities. The only information plaintiff provided that was specific to her checker job was that the basic duties consisted of "[being] friendly, lifting, walking, checking." *Id.* The record also contains a letter from plaintiff in which she stated that before April 1995, when the store she was working at shut down and she was transferred to the Homeland store in Pryor, "I had always been in management or file maintenance, which is computer operator. But instead the manager put me on the night crew stocking. In 34 years, I had never done this job." *Id.* at 106.

"It is not the claimant's burden to produce or develop vocational evidence at step five." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ,

however, made little inquiry about plaintiff's past work at the hearing. He solicited testimony from plaintiff that she worked as a checker for approximately six months at the Claymore store before it was closed in 1995 and she was transferred to the Pryor store, where she worked as a night stocker. The ALJ did not ask plaintiff anything about her duties as a checker. The ALJ did ask plaintiff what other jobs she had performed at Homeland since 1982, and plaintiff testified that she worked in file maintenance, which involved "changing the price of items and changing the tags out on the shelves," for eight years before the Claymore store closed. Appellant's App., Vol. II at 59.

The ALJ called a vocational expert (VE) to testify about plaintiff's past relevant work and her transferable skills. The VE stated that plaintiff's job as a cashier/checker is considered a semi-skilled job that has a specific vocational preparation (SVP) level of 3 [2] and is performed at the light exertional level. Plaintiff's job as a stocker is also considered semi-skilled, though with an SVP of 4, and it is usually performed at the heavy exertional level, but plaintiff may have

---

[2]    The Dictionary of Occupational Titles, which is published by the U.S. Department of Labor and relied on by the Commissioner for vocational information, assigns an SVP to each job it lists. SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. B, B-1 (1993). An SVP level of 3 means that the lapsed time required to learn the job is "[o]ver 1 month up to and including 3 months." *Id.*

performed it at the medium exertional level. The VE testified that plaintiff also performed the job of pricer, which is a light, semi-skilled job with an SVP of 3. The VE noted that plaintiff had indicated on the disability report that she had supervised people, and the VE testified that this would be considered a light, skilled job with an SVP of 7. When the ALJ asked about this supervision, however, plaintiff testified that she did it in 1973 or 1974, which was outside the relevant fifteen-year period. *See* 20 C.F.R. § 404.1565(a) (providing that work performed more than fifteen years before the disability decision usually will not be considered).

The ALJ then asked the VE whether plaintiff acquired any skills in her past work that would be transferable to sedentary jobs. The VE replied: "The cashier/checker, Your Honor, there are some cashiering positions at the sedentary level. It's still a semiskilled level, an SVP of 3, and it's sedentary exertion. In Oklahoma we have 1,500 such positions and 120,000 nationally." Appellant's App., Vol. II at 65. The VE did not identify what specific skills plaintiff acquired as a grocery checker, nor what industries could provide the sedentary, semi-skilled cashiering jobs, nor what duties such jobs would require her to perform. *See* Soc. Sec. Rul. 82-41, 1982 WL 31389, at *7; *Pyles*, 849 F.2d at 848.

In his decision denying disability benefits, the ALJ found that

> [t]he claimant's residual functional capacity for the full range of sedentary work is reduced by no repetitive pushing or pulling of leg controls with right leg; more than occasional stooping, crouching, or bending; more than infrequent kneeling or climbing of ramps or stairs; crawling; balancing; climbing of ropes, ladders, or scaffolds; or repetitive reaching overhead. The claimant would need to alternate sitting and standing every ½ hour. Additionally, the claimant would need a relatively clean work environment with limited exposure to marked temperature extremes and humidity, dust, noxious fumes and gases, caustic chemicals, or poor ventilation.

Appellant's App., Vol. II at 26. The ALJ also found that plaintiff was closely approaching advanced age, that she has a high school education, and that she "has acquired work skills, such as cashier skills, that she demonstrated in past work, and that, considering her residual functional capacity, can be applied to meet the requirements of semiskilled work functions of other work." *Id.* Using the grids as a framework for decisionmaking, the ALJ further found that "based on the vocational expert's testimony, there are a significant number of jobs in the national economy that she can perform. Examples of such jobs are: semiskilled cashier (1,500 in Oklahoma and 120,000 nationally)." *Id*.

Plaintiff challenges the ALJ's finding on several related grounds. She notes that not all cashiering jobs are semi-skilled, and she contends that there was no evidence that she acquired any skills from her grocery checker job. Further, she contends that even if her checker job was semi-skilled, there is no evidence of what specific skills she acquired from that job, and the ALJ did not make the required findings as to what specific skills she acquired.

The Commissioner admits that the ALJ did not make the required findings about what specific skills plaintiff acquired. The Commissioner contends that this omission was harmless error, however, because the sedentary, semi-skilled cashiering jobs identified by the VE and the ALJ were the same as plaintiff's past job as a grocery checker, just at a lighter exertional level. This contention is without support in the record. There is no evidence as to what plaintiff's duties were as a grocery store checker, nor is there any evidence as to what the duties are of the sedentary, semi-skilled cashiering jobs to which the VE referred. We note that the cashiering jobs listed in the Dictionary of Occupational Titles range from unskilled to skilled. Thus, it is clear that not all cashiering jobs are alike.

Further, the only two semi-skilled, sedentary jobs listed in the cashier and teller section of the Dictionary of Occupational Titles that have the same or lower SVP, reasoning, math, and language requirements as a grocery checker, are cashier, tube room (211.482-010) and food checker (211.482-014). The former generally "[c]omputes and records cash receipts, issues operating funds, receives money and makes change, via pneumatic tube, to assist cashiering personnel in [a] department store." Dictionary of Occupational Titles 184. The latter generally "[s]cans loaded trays carried by patrons in [a] hotel or restaurant cafeteria to compute [the] bill." *Id.* A comparison of the duties listed for either the tube room cashier or the food scanner with those listed for a grocery checker

-11-

shows several differences. Moreover, because there is no evidence of the duties plaintiff actually performed as a grocery checker, there is no evidence of the skills she actually acquired in that position. *See Pyles*, 849 F.2d at 848 ("The Secretary must show that specific skills actually acquired in [past relevant work] are transferable to [other jobs]."); *Winn v. Schweiker*, 711 F.2d 946, 948 (10th Cir. 1983) (rejecting finding of transferable skills as unsupported by substantial evidence where there was "no hint in the record as to the nature of the supervisory skills of the head custodian of a high school in Libertyville, Illinois").

Based upon the record before us, we conclude that the ALJ's determination that plaintiff had transferable skills and, therefore, was not disabled, is not supported by substantial evidence. Therefore, we must reverse the denial of benefits and remand the matter to the agency for further proceedings. On remand, the ALJ must not only make specific findings as to the particular skills plaintiff may have acquired and the specific jobs to which those skills are transferable, but he must base those findings on substantial evidence in the record.

Further, we note that before the expiration of her insured status, plaintiff turned fifty-five and moved into a higher age category, that of "advanced age," 20 C.F.R. § 404.1563(d). Advanced age is considered "the point where age significantly affects a person's ability to do substantial gainful activity." *Id.*

Before the Commissioner can find an advanced-age claimant's skills are transferable, he must show that "very little, if any, vocational adjustment [is] required." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f). "The work must be less demanding than that previously performed by the claimant; at the same time, though, it cannot require so little skill that anyone at all could do it, as older people are at a competitive disadvantage for such jobs." *Terry*, 903 F.2d at 1276 (quotation and citation omitted). Therefore, in determining whether plaintiff was disabled once she reached the age of fifty-five, the ALJ also must make findings as to the vocational adjustment required for plaintiff to perform other, semi-skilled jobs within her RFC.

Accordingly, we REVERSE the judgment of the district court and REMAND the action to the district court with directions to remand to the Commissioner for further proceedings consistent with this decision.