**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAVIER H. GALDEAN,

      Plaintiff - Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant - Appellee.

No. 02-2022
(D.C. No. CIV-01-69-LH/LCS)
(D. New Mexico)

**ORDER AND JUDGMENT** *

Before **KELLY** and **BALDOCK** , Circuit Judges, and **BRORBY** , Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The Commissioner of Social Security denied Javier Galdean's application for disability insurance payments and supplemental security. Mr. Galdean, who contends he has been disabled since 1991 due to back pain, headaches, a hand injury, and a mental impairment, now appeals a judgment by the district court affirming the Commissioner's decision. This appeal concerns Mr. Galdean's second application for benefits, the first having been denied by the Commissioner in 1992 and affirmed by this court in 1996.

## I. PROCEDURAL BACKGROUND

With respect to the present application for benefits, an administrative law judge (ALJ) held an evidentiary hearing in 1993 at which Mr. Galdean and a vocational expert testified. The ALJ found that while Mr. Galdean could no longer perform his former work, he did retain the capacity to perform light-duty work. He therefore was not disabled, according to the findings of the ALJ. The Social Security Appeals Council denied Mr. Galdean's request for review. After Mr. Galdean appealed to the district court, the Commissioner moved to remand the proceeding back to the ALJ to explore Mr. Galdean's mental status and his English-language deficiencies. The district court granted the motion and ordered the ALJ to conduct an inquiry into whether and how Mr. Galdean's mental impairment affected his capacity to perform light-duty work. The court also

-2-

directed the ALJ to consider what effect his limited English had on his ability to perform such work.

In February 1998, the ALJ conducted a second hearing, focusing on the two issues contained in the remand order. After hearing testimony from Mr. Galdean and a vocational expert, the ALJ confirmed her original finding: that Mr. Galdean was capable of performing light-duty work. Again the Appeals Council denied review, and Mr. Galdean appealed to the district court. Adopting the recommendation of a magistrate judge, the district court upheld the ALJ's findings. Mr. Galdean appeals the decision to this court.

## II. MEDICAL RECORD

Mr. Galdean injured his back in a workplace accident. He declined to undergo surgery, though he complains of disabling pain. The medical reports indicate mild muscle spasming and slightly decreased forward flexion in his lower back. "There is," according to one report (prepared by a psychologist, not a medical doctor), "at least some medical evidence to show at least some degree of spinal injury or disease, but there is at least some reason to think that it is unlikely that Mr. Galdean's back pain is proportionate to his level of medical impairment." Mr. Galdean also suffers what he describes as painful headaches, and he has limited strength in his left hand due to a tendon injury.

As the subject of the district court's remand order, the status of Mr. Galdean's mental impairment, if any, was critical to the ALJ's decision. She relied in part on two evaluations conducted by different psychologists. The first, written by Dr. Roger Enfield in 1994, observed that Mr. Galdean is "poised, pleasant, and polite" and noted that he showed little evidence of physical discomfort during his more than two hour evaluation. His IQ test yielded a score of 82, which was fourteen points lower than an earlier score, a discrepancy Dr. Enfield said may be attributable to difficulties arising from taking the exam in English. (The Social Security Administration does not regard IQ scores higher than 70, even if accompanied by marked restrictions in activities of daily living or working, as meeting the listing criteria for mental retardation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C & § 12.05D.) Mr. Galdean downplayed psychological symptoms and "instead over-signified and over-reacted to physical symptoms, with such intensity that attention and concentration were somewhat impaired." Dr. Enfield characterized this as a somatoform disorder, a condition marked by a tendency to confuse emotional and psychological deficits for physical symptoms. It includes, as well, "times of depression or hopelessness."

Despite suffering from lethargy and other depressive symptoms associated with his condition, Mr. Galdean's ability to follow work rules; to relate to co-workers; deal with the public and interact with supervisors; and to function

-4-

independently, Dr. Enfield reported, were "Good." His use of judgment and his ability to deal with work stresses and maintain concentration were rated "Fair." He works slowly, but "his persistence helps compensate for lower concentration." And although his ability to follow and understand complex job instructions is "Poor," according to Dr. Enfield, he is "Good" at carrying out simple job instructions.

After the remand order from the district court, the Commissioner directed Mr. Galdean to undergo a second psychological evaluation, this one from consulting psychologist Dr. Anthony Traweek. Dr. Traweek confirmed that Mr. Galdean was "somewhat fluent in English," had good concentration and mental control, had adequate judgment and intact memory, and manifested no difficulty in controlling his impulses. Mr. Galdean's IQ score of 75 placed him in the below average intellectual range, but Dr. Traweek nevertheless echoed Dr. Enfield's conclusion that he could follow simple work rules; relate to co-workers and supervisors; use reasonable judgment; function independently; and behave in an emotionally stable, reliable manner. Again echoing Dr. Enfield, Dr. Traweek also concluded that Mr. Galdean had impaired concentration and was unable to follow complex job instructions.

More adamantly than Dr. Enfield, Dr. Traweek believed that Mr. Galdean was suffering from a low grade chronic depression, a condition in Dr. Traweek's

mind that could potentially present a safety risk, given its connection to an already impaired level of concentration and attention to detail. Going beyond Dr. Enfield's conclusion, Dr. Traweek added that "Mr. Galdean would experience considerable difficulty in attempting to withstand the stresses and pressures associated with day-to-day independent work activity and the demands of employment."

## III. FAIRNESS OF THE HEARING

Mr. Galdean first contends that the ALJ denied him a full and fair hearing and thereby violated his due process rights. He complains that at the remand hearing the ALJ wrongly limited the scope of his lawyer's cross-examination of the vocational expert. Mr. Galdean points in particular to the ALJ's refusal to allow the expert to answer questions concerning the effect of Mr. Galdean's hand injury on his employability, suggesting this revealed the ALJ's partiality in favor of the Commissioner. We agree that the ALJ foreclosed counsel from exploring Mr. Galdean's hand inquiry, but we believe this restriction falls short of a due process violation. Nor do we accept Mr. Galdean's accusation of bias.

To begin, we note that "the role of cross-examination in disability proceedings should remain limited." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). Similarly, "the conduct of the hearing rests generally in the examiner's discretion." *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The

-6-

ALJ here explained her refusal to allow an inquiry into Mr. Galdean's hand injury by stressing that the scope of the remand hearing was limited to matters involving Mr. Galdean's mental status and language difficulties. She stressed that there had been an earlier hearing at which his physical limits were addressed. As the magistrate judge stated, the limits imposed by the ALJ were directed at confining counsel's questions to the issues on remand. We do not regard this or any other conduct by the ALJ as manifesting a bias against Mr. Galdean. We note, in addition, that despite precluding questions about his hand injury, the ALJ did allow Mr. Galdean's lawyer to conduct a fairly substantial examination of the vocational expert concerning topics consistent with the scope of the remand.

Mr. Galdean also argues that the ALJ, during her examination of the vocational expert, further violated due process by disregarding evidence of his mental deficits as described in the two psychological reports. He claims this is best illustrated by the nature of the hypothetical questions put to the vocational expert by the ALJ. They did not, he says, include all of his mental limitations. In particular, they did not include some of the observations and comments made by Dr. Enfield and, especially, by Dr. Traweek regarding Mr. Galdean. Again, we do not disagree with the description of the ALJ's conduct–her questions for the most part did not encompass all of the limits mentioned in the psychologists'

evaluations–but we nonetheless reject Mr. Galdean's characterization of that conduct.

In reviewing the two psychological reports, the ALJ found, as we confirm, evidence to support generally favorable–if at times conflicting–conclusions about Mr. Galdean's employability. According to Dr. Enfield's report, Mr. Galdean has a "Good" ability to follow work rules and understand simple job instructions. App., Vol. III at 372-73. The report further determined that Mr. Galdean has "Good" abilities with respect to relating to co-workers; dealing with the public and interacting with supervisors; functioning independently; and relating predictably in social situations. *Id.* Dr. Traweek expressed even stronger views about Mr. Galdean's occupational abilities, rating his capacity on the following categories as "Very Good": following work rules; understanding simple job instructions; relating to co-workers and supervisors; and using his judgment. *Id.* at 552-53. His capacity to behave in an emotionally stable manner is rated "Very Good to Good," while his ability to function independently, Dr. Traweek said, is "Good." *Id.* Nevertheless, Dr. Traweek concluded that Mr. Galdean would face considerable difficulty in handling the stresses and pressures associated with employment. *Id.* at 549. He also speculated that Mr. Galdean's "low grade chronic depression" might impair his concentration and thereby pose a safety risk. *Id.*

In other words, the two psychologists agreed on certain things: they both felt, for instance, that Mr. Galdean could follow basic work rules and understand simple job instructions, and that he was capable of interacting appropriately with co-workers and supervisors. But they differed, too. Most significantly, Dr. Enfield did not share Dr. Traweek's view that Mr. Galdean would face "considerable" difficulties in handling job-related stresses, provided, of course, that the job entailed relatively simple tasks. Nor did he agree that Mr. Galdean's depressive symptoms would pose a safety risk.

This is not to say that Dr. Traweek is wrong, and Dr. Enfield correct. It is to suggest, however, that resolving such a conflict in the medical evidence is a task allocated not to this court but to the ALJ. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). So long as the ALJ's hypothetical questions "includ[ed] all (and only) those impairments borne out by the evidentiary record" that inquiry is appropriate. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). We conclude that the ALJ's hypothetical questions adequately reflected the findings *established* by the medical record, even if they did not include matters about which the medical experts disagreed.

## IV. SUFFICIENCY OF EVIDENCE

Lastly, Mr. Galdean asserts that insufficient evidence supports the ALJ's decision. Social Security regulations require the ALJ to follow a five-step

sequential process for making disability determinations. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) Here, the ALJ reached step five to make her decision. At step five, the Commission bears the burden of showing that the claimant, who has demonstrated earlier in the sequential process an inability to perform his former job, may still perform alternate work, and that such work exists in significant numbers in the national economy. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).

Our role in reviewing the Commissioner's decision to deny benefits is limited. We ask only (1) whether substantial evidence supports the decision and (2) whether the decision comports with relevant legal standards. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sisco v. United States Dep't of Health & Humans Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

In view of this standard, we believe that sufficient evidence supports the ALJ's decision to deny benefits at step five of the sequential process. The vocational expert's testimony is most germane to our conclusion. Asked to identify jobs requiring little or no skills or physical exertion, and given Mr. Galdean's work history, education, and age, the expert said that there were

hundreds of thousands of suitable jobs, including jobs assisting in restaurant kitchens, especially Mexican restaurants. App., Vol. III at 495-96. Then asked to consider the effect of Mr. Galdean's limited English speaking abilities as well as his difficulty at processing complicated instructions, the expert said the figure above "would be eroded" by fifty to sixty percent. *Id.* at 496-97. This still leaves many thousands of jobs open to Mr. Galdean.

Granted, Mr. Galdean's lawyer later elicited from the expert more advantageous estimates about the number of jobs available to his client (that is, fewer), but this testimony rested on only a partial summary of a report prepared by one of the psychologists, Dr. Enfield. Without showing Dr. Enfield's report to the witness, counsel asked the expert to speculate on the number of jobs that would be available to Mr. Galdean "assum[ing]" he had several "unsatisfactory" occupational abilities, including an "unsatisfactory ability to use judg[]ment, deal with work stresses, and maintain attention and concentration, [and to] behave in an emotionally stable manner." *Id.* at 509. Accepting those limitations, the expert said no jobs would be available to Mr. Galdean. *Id.*

But the ALJ is not required to accept those limitations, in part because they represent an incomplete inventory of Mr. Galdean's occupational skills as described by both Dr. Enfield and Dr. Traweek. As stated above, the two psychologists generally made favorable findings concerning Mr. Galdean's

capacity to work, provided the tasks he is expected to perform are not complex. Additionally, some of the limitations suggested by Dr. Enfield, and relied on by Mr. Galdean's lawyer during his questioning of the vocational expert, are directly challenged by Dr. Traweek. For instance, contrary to Dr. Enfield's report, Dr. Traweek concluded that Mr. Galdean has "Very Good" occupational judgment and a "Very Good to Good" ability to behave in an emotionally stable manner. App., Vol. III at 552-53. Again, we stress that it is for the ALJ, not this court, to weigh the competing medical evidence. We therefore reject the assertion that the ALJ was required to accept the "assumptions" that served as the basis for Mr. Galdean's questioning of the vocational expert. Those assumptions were in fact findings by one medical expert that were contested by the other. "Any . . . opinions premised on such [] assumption[s] clearly would not bind the ALJ." *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

-12-