**Debbie BRENNAN, Plaintiff,**

v.

**Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.**

**Civil Action No. 06–4100–SAC–JTR.**

United States District Court, D. Kansas.

Aug. 7, 2007.

---

1.  On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Scott L. Johnson, Tilton & Tilton, Chtd, Topeka, KS, for Plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The court referred this administrative appeal to the United States Magistrate Judge for report and recommendation. The Magistrate Judge filed a report and recommendation on July 13, 2007, clearly stating the parties' right to file written objections to the recommendation within ten days. Ten days have passed and no written objections have been filed in accordance with 28 U.S.C. § 636(b)(1).

The court has reviewed the report and recommendation, as well as the relevant pleadings in this case. Based upon this review and the absence of any filed objections, the court accepts the report and recommendation and adopts it as the ruling of this court, reversing and remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

REID, United States Magistrate Judge.

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings.

### I. Background

On Oct. 31, 1985, plaintiff filed her first application for supplemental security income (SSI) which was denied initially without further proceedings. (R. 32). On July 20, 1992,[2] plaintiff filed a second application which was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ). (R. 32). Plaintiff sought and was granted review by the Appeals Council which remanded for a supplemental hearing. (R. 32). On Mar. 30, 1995 a decision was issued finding plaintiff disabled as of Apr. 21, 1992 and granting her application for SSI. (R. 797–807).

Plaintiff was in prison from 1998 through May 21, 2003 (R. 778, 848),[3] and

---

**2.** Although the ALJ stated that this application was filed July 20, 1992, the favorable decision found plaintiff disabled as of Apr. 21, 1992 and noted that plaintiff's SSI application was "protectively filed 4–21–92." (R. 805). Although the court need not decide this issue, it is possible the application was protectively filed Apr. 21, and physically provided to the Social Security Administration on July 20, 1992.

**3.** Plaintiff testified at the hearing that she was in prison from 1998 to 2003. (R. 848). In her application for SSI dated Jun. 7, 2002, plaintiff asserted she was released from jail on May 10, 2002. (R. 778). Apparently, plaintiff returned to prison sometime thereaf-

her SSI benefits "were ceased in 1998 because of her incarceration." (R. 32). Plaintiff protectively filed an application for SSI on May 23, 2002 (R. 776) and submitted a paper application which was received Jun. 7, 2002. (R. 32, 777–79). That application was denied initially on Jun. 17, 2002, and plaintiff did not seek reconsideration. (R. 32, 780). On May 29, 2003, plaintiff protectively filed the applications for disability insurance benefits (DIB) and SSI which are the subject of this case. (R. 32, 786–88). In these applications, plaintiff alleged disability beginning Apr. 1, 1984. (R. 786). These applications were denied initially and after reconsideration. On Sept. 8, 2004, plaintiff submitted an untimely request for a hearing before an ALJ and subsequently submitted another application on Sept. 17, 2004. (R. 32, 60–63).

The ALJ found good cause for untimely filing of the request for hearing, and a hearing was held on May 11, 2005. (R. 32, 828–74). Plaintiff appeared at the hearing without representation, and was advised of her right to representation and that the ALJ would grant a continuance for her to secure an attorney. (R. 32, 834–35). Plaintiff chose to proceed without representation, and a hearing was held at which testimony was taken from Dr. Golon, a medical expert board-certified in psychiatry; from plaintiff; and from a vocational expert. (R. 32, 829, 835).

On July 21, 2005, the ALJ issued a decision finding plaintiff is not disabled, and denying her applications. (R. 32–41). Specifically, the ALJ found plaintiff was insured for DIB only through Jun. 30, 1985. (R. 33). He found insufficient evidence to establish eligibility for DIB pursuant to Title II of the Act during the period after plaintiff's alleged onset date

and before insured status expired, as there was no evidence whatever of medical treatment before Mar. 1991. (R. 34). Plaintiff does not claim the findings relating to Title II eligibility are erroneous, so the court's further discussion relates only to plaintiff's applications for SSI.

The ALJ found no evidence plaintiff has engaged in substantial gainful activity since her alleged onset date, and he found that plaintiff has "severe" impairments within the meaning of the Act, consisting of: arthralgias, asthma, sinusitis, a depressive disorder, an anxiety disorder, and a personality disorder. (R. 33). He found that plaintiff has no impairment or combination thereof which meets or equals an impairment in the Listing of Impairments, and specifically considered Listings 12.04, 12.06, and 12.08. (R. 34).

He summarized and discussed the evidence in the record, including plaintiff's testimony and medical evidence from plaintiff's period of incarceration and before. (R. 34–38). However, he noted that "the bulk of medical evidence recited herein is not relevant to the current application [for SSI], but is provided here for historical perspective." (R. 34–35). He noted that "the record contains only two consultative examination[s] on or about the date of [plaintiff's] application for benefits." (R. 34).

He discussed the opinions of the state agency program physicians and psychologists but stated that his residual functional capacity (RFC) assessment was based upon evidence not available to those physicians. (R. 38). He discussed the opinions of the consultative examiners, Drs. Ohlde, and Khanna, and the opinion of the medical expert, Dr. Golon. (R. 35–37).

ter, because the prison medical records continue into 2003, and indicate a parole date of

May 21, 2003. (R. 305).

He found plaintiff's allegations regarding her symptoms and the severity of her impairments not credible. (R. 40, finding no. 4). He discussed his application of the Psychiatric Review Technique (PRT), and found that plaintiff has "mild" restrictions in activities of daily living, "moderate" restrictions in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence, and pace, and "no" episodes of decompensation. (R. 38). He found no evidence of the presence of paragraph "C" criteria regarding mental impairments. (R. 38).

The ALJ found plaintiff is capable of performing a range of light work on level ground involving no use of foot controls and with several mental and environmental limitations. (R. 38). With regard to mental limitations, the ALJ specifically found that plaintiff can perform simple, routine, repetitive, low stress work, involving minimal interaction with the public and no supervisory responsibilities. (R. 38). He found plaintiff has no past relevant work, but based upon the vocational expert's testimony, the RFC assessed, and plaintiff's age and educational experience, he found that she is able to perform work existing in significant numbers in the economy. (R. 38–39). Therefore, he determined plaintiff is not disabled within the meaning of the Act and denied her applications for SSI. (R. 39, 40).

After the ALJ issued his unfavorable decision, plaintiff secured an attorney and sought Appeals Council review of the ALJ's decision. (R. 27–28). On Jun. 29, 2006, the Appeals Council denied plaintiff's request for review, while on the same date plaintiff's attorney submitted additional evidence for the Appeals Council's consideration. (R. 14–16, 795–826). Thereafter, plaintiff's attorney sought to have the Appeals Council vacate its denial of review and consider plaintiff's request for review in light of the new evidence submitted on Jun. 29, 2006. (R. 827). On Aug. 11, 2006, the Appeals Council set aside its earlier action and reconsidered plaintiff's request for review in light of the additional evidence. (R. 10). The Council found the additional evidence did not provide a basis for changing the ALJ's decision and again denied review. (R. 10–12). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 10); *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir.2003). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." *White*, 287 F.3d at 905 (quoting *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800 (10th Cir.1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett*, 862 F.2d at 804–05; *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which pre-

vents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); *see also, Barnhart v. Walton,* 535 U.S. 212, 217–22, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002)(both impairment and inability to work must last twelve months). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Id.;* 20 C.F.R. § 416.920 (2005).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920; *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir.2004); *Ray,* 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* at 750–51. If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the process. *Id.*

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy. *Williams,* 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir.2001); *Williams,* 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. *Id.; Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999).

Plaintiff claims: that the ALJ erred in evaluating plaintiff's mental impairments and the opinions of the medical expert, Dr. Golon; that the ALJ's credibility determination is not supported by substantial evidence in the record; and as a result of these errors, the ALJ's mental RFC assessment is erroneous. The Commissioner argues that the ALJ's evaluation of plaintiff's mental impairments and consideration of the credibility of her allegations was proper and supported by substantial evidence in the record "from the time period after [plaintiff's] incarceration." (Comm'r Br., 4). He argues that "the ALJ made his RFC determination based on the evidence associated with this application," and his assessment is supported by substantial evidence. (Comm'r Br., 7–8). In her reply brief, plaintiff argues that the evidence from before her period of incarceration "is essential for consideration of Plaintiff's mental impairments as it sets forth the proper diagnosis of her impairments and shows Plaintiff's true level of functioning as affected by the impairments." (Reply, 3). Plaintiff argues that medical evidence from previously adjudicated periods is relevant to plaintiff's medical history and should be considered by the ALJ, and the evidence should have been proffered to the medical expert. *Id.* The court will first address the legal standard applicable to the ALJ's decision, and the weight to be given to the evidence relating to the period between 1991 and 1998 and to the period of plaintiff's incarcerations beginning in 1998.

## III. Legal Standard Applicable Here

Plaintiff admits there is no legal error in the ALJ's failure to consider the 1995 decision which provided SSI benefits to her. (Pl.Br.55). She argues, however, that most of the probative evidence relating to her mental impairment is that produced before the 1995 decision and her subsequent incarceration, part of which was first provided to the Appeals Council with her request for review in this case,[4] that her benefits were "ceased" not because of medical improvement in her condition but because she was incarcerated, and that there is no evidence of medical improvement after 1998. The Commissioner did not specifically address plaintiff's implied argument, but argued that the only medical evidence produced after plaintiff's incarceration was a mental consultative examination and a physical consultative examination, and those examinations support the ALJ's determination that plaintiff does not have disabling impairments. (Comm'r Br., 4–5). Plaintiff argues that evidence from the prior adjudicated period is necessary to a proper understanding of her mental impairments, is relevant to her medical history, and should have been considered by both the medical expert in testifying regarding plaintiff's condition and by the ALJ in making his decision. (Reply, 3).

Plaintiff's argument implies that because plaintiff was eligible for SSI benefits before her incarceration, she must be awarded benefits upon the completion of her incarceration, or the Commissioner must apply the medical improvement standard in determining whether to discontinue benefits. Plaintiff's argument misunderstands the law with regard to both the "medical improvement" standard and to termination of benefits due to incarceration.

When an individual is receiving SSI, the Commissioner will conduct periodic reviews to determine whether that individual continues to meet the requirements of the law. 20 C.F.R. § 416.990. In conducting continuing disability reviews for SSI benefits, the Commissioner applies a seven-step sequential evaluation process to determine whether there has been medical improvement in the individual's impairment(s) that is related to ability to do work. 20 C.F.R. § 416.994. This is often called applying the "medical improvement" standard.

■ Apart from the "medical improvement" standard, however, there are various reasons individuals may not be eligible for SSI benefits for which they would be otherwise eligible. 20 C.F.R. §§ 416.207–15. In passing Title XVI of the Act, Congress excluded from eligibility for SSI benefits "anyone who is an 'inmate in a public institution.'" *Schweiker v. Wilson,* 450 U.S. 221, 224, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981)(quoting 42 U.S.C. § 1382(e)(1)(A)). An "inmate in a public institution" includes individuals incarcerated in jail or prison. *Wilson,* 450 U.S. at 232, 101 S.Ct. 1074; *Powell v. Barnhart,* No. 05–2104, 2006 WL 3209933, *5 (E.D.Pa. Nov.2, 2006); *Johnson v. Barnhart,* No. 04 CIV 5574(HB), 2005 WL 2993933, *3–4 (S.D.N.Y. Oct.7, 2005). The Commissioner has promulgated regulations implementing the Act and providing that residents of public institutions may not receive SSI benefits. 20 C.F.R. § 416.211.

The regulations provide that payment of SSI benefits may be suspended or terminated in certain circumstances. 20 C.F.R. §§ 416.1320–40. Payment of SSI benefits is suspended effective with the first full month an individual is a resident of a

---

4. As plaintiff's argument implies, the evidence presented to the Appeals Council was made a part of the administrative record (R. 13) and will be considered by this court in its review of the Commissioner's decision. *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994).

public institution. 20 C.F.R. § 416.1325. Benefits for which payments have been suspended will be resumed "effective with the earliest day of the month in which a recipient is no longer a resident of a public institution." 20 C.F.R. § 416.1325(b). However, benefits will be terminated "following 12 consecutive months of benefit suspension for any reason ... effective with the start of the 13th month after the suspension began." 20 C.F.R. § 416.1335.

■ Thus, when an individual is incarcerated for a period of more than twelve months, her SSI benefits will be terminated regardless of the presence or absence of medical improvement in her impairment(s). That is what happened here. Plaintiff's benefits were terminated when they had been suspended for twelve consecutive months of incarceration. When plaintiff was released from prison, her benefits could not be resumed because they had been terminated. Therefore, plaintiff made a new application for SSI benefits. Because this case involved a new application rather than a continuing disability review, the ALJ applied the five-step sequential evaluation process provided in 20 C.F.R. § 416.920 rather than the seven-step medical improvement standard provided in 20 C.F.R. § 416.994 for continuing disability reviews. There was no error in the failure to apply the medical improvement standard.

## IV. Consideration of Evidence

The regulations provide that the Commissioner has the responsibility to develop a claimant's "complete medical history for at least the 12 months preceding the month in which [the claimant filed her] application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 416.912 (emphasis added). As plaintiff argues, medical evidence and opinions from the earlier adjudicated period are relevant to plain-

tiff's medical history and should be considered. (Reply, 3)(citing *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir.2004)). Again as plaintiff argues, the medical evidence of record as constituted at the hearing and presented for Dr. Golon's, the medical expert's, review consisted of only exhibits B–1F through B–13F. (Pl.Br., 43–44)(citing (R. 845)). The record presented for Dr. Golon's review and admitted into evidence at the hearing did not include exhibits B–14F through B–32F or the evidence presented for the first time to the Appeals Council. Therefore, Dr. Golon did not include in his review any of those medical records, including records from the Sedgwick County Dep't of Mental Health, the medical reports of Drs. Shah, Romulis, or Kohrs, or the treatment records of plaintiff's therapist, Gloria Jones–Wolf, LSCSW. (R. 452–58, 484–88, ·570–71, 808–26).

The record is not clear how exhibits B–14F through B–32F came to be admitted into the record. (R. 845–46(Exhibits 1 through 13F admitted and made a part of the record)). There is no indication that the hearing record was subsequently reopened and further exhibits admitted. (R. 874). However, those exhibits now appear in the record. (R. 7, 426–761). As plaintiff argues, the ALJ told her to provide copies of the records she thought relevant, and he would provide the "emotional ones" to Dr. Golon and get the physician's updated opinion. (Pl.Br., 44)(quoting record 869). There is a "Correspondence" from plaintiff dated May 13, 2005, two days after the hearing, in which plaintiff states "Here are those old records which are the pertinent information you expressed a need for." (R. 42). Apparently, it was at this point the ALJ admitted the exhibits into the record. The ALJ discussed these records extensively in his opinion (R. 35–37), but found that they were irrelevant to the "current application" and stated they

were noted in the decision only for historical perspective. (R. 34–35). Moreover, there is no indication in the record or the decision that the ALJ ever provided the records to Dr. Golon or sought an update to the medical expert's opinions in light of the new exhibits.

Further, the Appeals Council made a part of the administrative record the evidence presented to it by plaintiff's counsel including: the Mar. 30, 1995 decision awarding plaintiff SSI benefits, a psychological report prepared on July 19, 1994 by Dr. ElDean Kohrs, Ph.D., the written opinion of therapist Gloria Jones–Wolf dated Jun. 16, 1994, and additional treatment records from the Sedgwick County Dep't of Mental Health. (R. 797–826).

Although the agency was correct to require plaintiff to complete a new application for SSI after her release from prison, and although the ALJ was correct not to apply the medical improvement standard of review, the Commissioner had found that plaintiff was disabled because of mental impairments from Apr. 21, 1992 at least until her benefits were terminated in 1998 due to twelve months continuous suspension because of incarceration. In his decision, The ALJ relied upon the facts: (1) that the consultative psychologist, Dr. Ohlde opined that plaintiff could perform some work, (2) that the medical expert, Dr. Golon opined that plaintiff's mental impairments were not disabling and (3) that there was little evidence of psychiatric treatment, in reaching his conclusion that plaintiff can perform a limited range of light work and is not disabled. However, neither Dr. Golon, Dr. Ohlde, nor Dr. Khanna had access to the majority of the medical records relating to plaintiff's history of disability due to mental impairments or to the earlier opinions of the mental health professionals or the treatment records or opinions of plaintiff's treating therapist. In the circumstances of this case

development of the record regarding the earlier period is necessary to understand the progression of plaintiff's impairments. While the court acknowledges that there is little evidence of mental health symptoms or treatment in the Kansas Dep't of Corrections' medical record, it is necessary for the mental health professionals to evaluate all of the evidence and determine what plaintiff's mental limitations and restrictions are. Opinions based upon only part of the available evidence are incomplete and are therefore not based upon substantial evidence on the record as a whole.

■ The decision reveals that, although the ALJ reviewed some of the records regarding the prior period, he erroneously found them irrelevant to the current application. Apparently because he found the records irrelevant to the current application, the ALJ did not provide the record to Drs. Golon, Ohlde, or Khanna, and did not seek an updated opinion based upon the physicians' review of the evidence in its entirety. Therefore, remand is necessary for the Commissioner to properly develop the record regarding the prior period and seek expert medical advice regarding plaintiff's current limitations in light of the record *in toto*. If the Commissioner determines that plaintiff is not disabled, then he must explain why he found the claimant not disabled when the claimant had previously been found to be disabled. Although the court recognizes that there are perfectly legitimate and reasonable reasons for denying benefits at a later date when benefits were awarded earlier, those reasons must be set forth by the Commissioner in his decision in order for this court to engage in meaningful judicial review. The court does not imply that the medical improvement standard must be applied in circumstances such as this, merely that the decision must include an explanation of the basis from which one might conclude that

plaintiff is not presently disabled although she was earlier determined to be disabled. Relevant to that inquiry will be an evaluation of the longitudinal progression of plaintiff's condition including evaluation of the medical records and opinions produced before plaintiff was incarcerated, medical evidence and medical opinions relating to plaintiff's condition and treatment while she was incarcerated, and medical evidence and opinions relating to plaintiff's condition and treatment after she was released from incarceration.

Because the case must be remanded for a proper evaluation of the medical evidence and medical opinions, it would be premature for the court to attempt to evaluate the ALJ's credibility findings and mental RFC assessment reached in the decision below. On remand and after a proper development and evaluation of the medical evidence, the Commissioner must once again consider the credibility of plaintiff's allegations of symptoms and assess plaintiff's RFC and apply the sequential evaluation process to determine whether plaintiff is presently disabled.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that JUDGMENT be entered REMANDING the case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir.2004).

---

1. On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.