FILED
United States Court of Appeals
Tenth Circuit

October 9, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ROSE M. MORGAN,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 24-8085
(D.C. No. 1:24-CV-00022-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **KELLY**, and **FEDERICO**, Circuit Judges.
_____

Rose M. Morgan appeals the Social Security Administration's denial of

disability benefits.  We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C.

§ 1291.  We reverse and remand to the agency for further proceedings.

**I.**      **BACKGROUND & PROCEDURAL HISTORY**

Before Morgan applied for disability benefits, she worked for fourteen years as

a "[b]uyer" for the Wyoming Department of Transportation.  Aplt. App. vol. 1

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

at 234–35; vol. 2 at 295.  This job involved duties such as soliciting bids, managing contracts, meeting with vendors, and training end-users on the department's procurement platform.  *Id.*  But she left that job and sought disability benefits based on fibromyalgia, rheumatoid arthritis, degenerative disc disease, memory issues, and migraines.

Morgan's disability application traveled up and down the various levels of administrative and judicial review, culminating (for present purposes) in a hearing before an administrative law judge (ALJ) in September 2023.  At that hearing, the ALJ asked a vocational expert about Morgan's prior job.  The expert stated that the Dictionary of Occupational Titles would classify the job as a "purchasing agent," which is a skilled job.  Aplt. App. vol. 6 at 1520.  The ALJ then propounded some hypothetical physical, mental, and exertional limitations, and the expert concluded that a person with those limitations could not continue working as a purchasing agent.  The expert further concluded, however, that such a person would be able to transfer the skills learned as a purchasing agent to the semi-skilled jobs of receptionist, appointment clerk, and order clerk, all of which could be performed with the hypothetical limitations propounded by the ALJ.  The ALJ then asked, "[W]hat are the skills that the Claimant acquired at her past work as a purchasing agent, that would transfer to the three jobs that you just identified?"  *Id.* at 1522.  The expert answered, "Well, verbal recording, record keeping would be the ones that would transfer directly to those jobs."  *Id.*

2

Following the hearing, the ALJ issued a written decision finding that Morgan was severely impaired by obesity, fibromyalgia, lumbar degenerative disc disease, osteoarthritis of the knees, and migraines. However, she retained the residual functional capacity (RFC) to perform sedentary work with certain restrictions to accommodate her severe impairments. The ALJ further concluded that Morgan's RFC would not allow her to return to her previous job as a purchasing agent. But, given the vocational expert's testimony, her previous job taught her the skills of "verbal recording and recordkeeping," and those skills would allow her to work as a receptionist, appointment clerk, and order clerk. Aplt. App. vol. 6 at 1494, 1495.[1] Because those jobs continue to exist in adequate numbers in the national economy, the ALJ concluded Morgan was not disabled for Social Security purposes.

Morgan appealed to the Social Security Appeals Council, which denied relief, and then to the United States District Court for the District of Wyoming, which likewise denied relief. She then brought the appeal currently before us.

---

[1] It appears that expert's references to "verbal recording" and "recordkeeping" (or "record keeping") refer to a section of a government publication known as *The Revised Handbook for Analyzing Jobs*. Later in the hearing before the ALJ, the expert testified that "verbal recording and record keeping . . . fall[] under the work field of 231, in case anybody is keeping score." Aplt. App. vol. 6 at 1523; *cf.* U.S. Department of Labor, *The Revised Handbook for Analyzing Jobs* 4-24 (1991) (describing work field 231, titled "VERBAL RECORDING-RECORD KEEPING," and defined as "[p]reparing, keeping, sorting, and distributing records and communications, primarily verbal in character but including symbol devices, to communicate and systematize information and data by methods not specifically defined elsewhere [in the *Revised Handbook*]"). But the ALJ understood the vocational expert's testimony as an opinion that Morgan had previously picked up discrete skills known as "verbal recording" and "recordkeeping," and both parties' positions reflect that understanding.

## II.    STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (citation and internal quotation marks omitted).

## III.    ANALYSIS

The ALJ concluded Morgan's severe impairments prevented her from returning to her past work as a purchasing agent.  Per agency regulations, the ALJ then asked whether Morgan could perform other work in light of her RFC, age, education, and work experience.  *See* 20 C.F.R. § 404.1520(g)(1).  "Skills [learned in previous jobs] and their transferability [to other jobs] relate to 'work experience' in the definition of disability and to people's abilities to do occupations different from those they did before becoming impaired."  Soc. Sec. R. 82-41, 1982 WL 31389, at *1.

### A.    Verbal Recording and Recordkeeping as "Skills"

Morgan argues that verbal recording and recordkeeping do not qualify as skills for Social Security purposes because Social Security Ruling 82-41 illustrates its definition of "skill" with examples such as "making precise measurements, reading blueprints, and setting up and operating complex machinery."  *Id.* at *2.  Morgan argues that verbal recording and recordkeeping do not rise to this level.

But Social Security Ruling 82-41 includes many other illustrations of tasks that qualify as potentially transferable skills, including "clerical skills" such as

4

"typing, filing, tabulating and posting data in record books." *Id.* at *3. The identified skills of verbal recording and recordkeeping fall comfortably within these illustrations. We therefore disagree with Morgan's interpretation of Ruling 82-41.

> **B.    Substantial Evidence to Support Verbal Recording and Recordkeeping as Skills Morgan Learned at Her Previous Job**

Morgan further argues there is not enough evidence to support the ALJ's finding that she developed verbal recording and recordkeeping skills. We agree as to verbal recording and we conclude this requires remand to the agency.

The agency bears the burden to produce evidence on the issue of transferable skills. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Moreover, Ruling 82-41 states that "[f]indings of fact in determinations or decisions involving transferability of skills . . . should be supported with appropriate documentation." 1982 WL 31389, at *7 (emphasis omitted).

The only evidence the ALJ cited to support the skills-transferability issue was the vocational expert's opinion. The government argues that an expert's opinion is substantial evidence. But the government does not offer any case holding that an expert's opinion *alone*—without supporting documentation in the record—qualifies as substantial evidence. We are likewise unaware of any such case.

"[W]e may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation and internal quotation

5

marks omitted).  The latter is the case as to recordkeeping.  Again, the record shows Morgan worked for fourteen years doing tasks such as soliciting bids and managing contracts.  *See, e.g.*, Aplt. App. vol. 1 at 235 ("I would solicit competitive bids on all the items the dept. of transportation needed to buy, solicit quotes, rfp[']s, travel to train on procedures.").  It is reasonable to find that she would have picked up recordkeeping skills.

The same is not true for verbal recording.  As Morgan asks rhetorically, "Verbal recording of what?  Who is doing the verbalizing?" Aplt. Opening Br. at 19. Nothing in the record defines this skill.  The vocational expert and ALJ did not cite, and the government has not since cited, anything in the record suggesting that Morgan's past employment taught her this skill, whatever it may be.[2]  The ALJ's finding on this issue is therefore unsupported by substantial evidence.

"[W]e can uphold administrative action when an agency gives two independent reasons and only one of them is valid." *Zzyym v. Pompeo*, 958 F.3d 1014, 1033–34 (10th Cir. 2020).  Thus, if recordkeeping by itself is enough to qualify Morgan for the jobs of receptionist, appointment clerk, and order clerk, we may affirm on that independent basis.  But nothing in the record suggests that Morgan can perform those

---

[2] Again, it may or may not have been the vocational expert's intent to identify verbal recording as a discrete skill that Morgan learned through her prior employment.  *See supra* note 1.

jobs with only recordkeeping skills and not verbal recording skills. Thus, we must remand for the agency to take another look.[3]

## IV.   CONCLUSION

We reverse the district court's judgment and remand with instructions to return this matter to the agency for further proceedings consistent with this order and judgment.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[3] Morgan asks the court to remand with instructions to award benefits. We find that relief inappropriate on the current record.