Robert M. COLEMAN, Plaintiff,

v.

Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.

Civil Action No. 06–2427–JWL–JTR.

United States District Court, D. Kansas.

Nov. 13, 2007.

---

1. On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Yvonne M. Ernzen, Arehart & Ernzen, P.A., Overland Park, KS, for Plaintiff.

Andrea L. Taylor, Office of United States Attorney, Kansas City, KS, for Defendant.

## ORDER

JOHN W. LUNGSTRUM, District Judge.

On October 25, 2007, a Report and Recommendation (doc. 23) was issued by the Honorable James T. Reid, Magistrate Judge. The time in which to file objections has passed and to date no objections have been filed. The court has reviewed the Report and Recommendation and finds that it should be adopted.

IT IS THEREFORE ORDERED BY THE COURT that the Report and Recommendation (doc. 23) is adopted and the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with the Report and Recommendation.

## REPORT AND RECOMMENDATION

JOHN THOMAS REID, United States Magistrate Judge.

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i), 423 (hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and JUDGMENT be entered REMANDING the case for further proceedings in accordance with this opinion.

### I. Background

Plaintiff filed an application for disability insurance benefits alleging disability beginning Feb. 23, 2001. (R. 119–21). The application was denied initially and after review. (R. 49, 53). Plaintiff requested a hearing, and the Administrative Law

Judge (ALJ) found plaintiff disabled within the meaning of the Act and issued a favorable decision on May 29, 2003, before a hearing was held. (R. 40, 50–56, 70). The Appeals Council, on its own motion reviewed the decision, found it was not supported by substantial evidence, vacated the decision, and remanded for further proceedings. (R. 87–90). After remand, the record was developed further, and on Jan. 14, 2004 a hearing was held before the same ALJ. (R. 345–73).

On Apr. 8, 2004, the ALJ issued a second decision finding that plaintiff was not disabled within the meaning of the Act at any time on or before Dec. 31, 2001, plaintiff's date last insured. (R. 48, finding no. 11). Consequently, he denied plaintiff's application. *Id.*

Specifically, the ALJ found that plaintiff has a combination of impairments which is severe within the meaning of the Act, noted that plaintiff's attorney did not introduce evidence or make any argument that plaintiff's impairments meet or equal a listed impairment, and concluded that plaintiff does not have any impairment or combination of impairments which meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). (R. 41–42).

In evaluating the evidence for a residual functional capacity (RFC) assessment, the ALJ found that plaintiff's allegations regarding disabling symptoms are not credible, and that the third-party statements of plaintiff's wife, mother, daughter, and former co-worker "do not support a finding that claimant's symptoms preclude all types of work activity." (R. 46). The ALJ discussed medical opinions from Dr. Spencer, plaintiff's treating physician; Dr. Mandel; Dr. Hood, plaintiff's orthopedic surgeon; and Dr. Riaz and Dr. Fishman, consultant examiners. (R. 44–45). The ALJ accorded "little weight" to the treating source opinion of Dr. Spencer and

stated that he had "considered all of the objective medical findings of record and has accorded appropriate weight to all treating and examining physicians of record, and particularly those opinions that are supported by the totality of the treatment records, physical and diagnostic findings, etc." (R. 45). The ALJ stated that he had also considered the opinions of the non-examining state agency program physicians and psychologists and had accorded those opinions "appropriate weight." (R. 47).

The ALJ found that plaintiff has the RFC for sedentary work activity with a sit/stand option. (R. 46, 48, finding no. 5). He concluded that plaintiff is unable to perform his past relevant work but is able to perform jobs existing in significant numbers in the economy such as work as a surveillance systems monitor, an information clerk, and a hand mounter. (R. 46). Consequently, the ALJ concluded plaintiff is not disabled within the meaning of the Act, and denied his application. (R. 48).

Plaintiff requested review by the Appeals Council and submitted additional evidence. (R. 325–44). The Appeals Council accepted the additional evidence, considered it, and made it a part of the administrative record. (R. 9, 12). Nonetheless, the Appeals Council denied review. (R. 9–11). Consequently, the ALJ's decision dated Apr. 8, 2004 is the final decision of the Commissioner subject to judicial review. (R. 9); *Threet v. Barnhart,* 353 F.3d 1185, 1187 (10th Cir.2003). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual find-

ings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir.2001).

Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." *White,* 287 F.3d at 905 (quoting *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir.1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett,* 862 F.2d at 804–05; *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d); *see also, Barnhart v. Walton,* 535 U.S. 212, 217–22, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002)(both impairment and inability to work must last twelve months). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Id.*; 20 C.F.R. § 404.1520 (2004).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 404.1520; *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir.2004); *Ray,* 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* at 750–51. If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520. This assessment is used at both step four and step five of the process. *Id.*

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. *Williams,* 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir. 2001); *Williams,* 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity. *Id.; Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred: (1) in failing to find that plaintiff's impairments equal listed impairments 14.09A or 8.05; (2) in assessing plaintiff's RFC; (3) in evaluating the credibility of plaintiff's allegations of disabling symptoms; (4) in failing to evaluate the third-party statements; and (5) in rejecting the opinion of the treating physician. The Commissioner argues that the ALJ properly found plaintiff's condition does not equal a listing, that the error in failing to perform a function-

**1268**

by-function analysis before concluding plaintiff can perform sedentary work is harmless in the circumstances, that the ALJ made a proper credibility determination which is supported by substantial evidence, and that the ALJ properly discounted the opinion of plaintiff's treating physician. For ease of analysis, the court addresses each claim in an order somewhat different than used by plaintiff in his brief.

## III. Step Three—Listings 14.09A and 8.05

■ The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. § 404.1525(a); *see also,* Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. *Williams,* 844 F.2d at 751; *see Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). Plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet *all* of the specified medical criteria' contained in a particular listing." *Riddle v. Halter,* No. 00–7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in *Zebley* )). "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." *Caviness v. Apfel,* 4 F.Supp.2d 813, 818 (S.D.Ind.1998).

■ To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, a claimant must present medical findings at least equal in severity to all the criteria for the most similar listed impairment. *Zebley,* 493 U.S. at 531, 110 S.Ct. 885; *see also,* 20 C.F.R. § 404.1526(a)(for an impairment to be equivalent to a listed impairment, medical findings must be "at least equal in severity and duration to the listed findings"). Medical findings are "symptoms, signs, and laboratory findings." 20 C.F.R. § 404.1528. Equivalence is based only upon medical findings supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b).

Therefore, to prevail on his claim of equivalence, plaintiff has the burden to show record evidence of symptoms, signs, or laboratory findings equal in severity and duration to all the criteria of Listings 14.09A or 8.05. Plaintiff cites a report from Dr. Chernoff based upon the doctor's review of plaintiff's file. (Pl.Br.17–18). In that report, the doctor opined that plaintiff's combination of impairments equals the severity of Listings 14.09A and "probably 8.05." *Id.* (quoting R. 338). Based upon that report, made a part of the administrative record by order of the Appeals Council, plaintiff argues that plaintiff's condition equals the severity of Listings 14.09A or 8.05, and that the ALJ erred in finding otherwise.

Listing 14.09A is met if plaintiff shows evidence demonstrating a:

History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in *inability to ambulate effectively or inability to perform fine and gross movements effectively,* as defined in 14.00B6b and 1.00B2b and B2c

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.09A(emphases added).

■ Plaintiff does not present evidence showing an inability to ambulate effectively or inability to perform fine and gross

movements effectively as defined in the regulations, or other symptoms, signs, or laboratory findings *equal in duration and severity* to those findings. In the report which plaintiff quotes, Dr. Chernoff opined that plaintiff's condition "interferes seriously with use of hands and feet," "would interfere with gait and cause pain," and "would sharply limit both handling and fingering." (R. 338).

The regulations define inability to ambulate effectively as "an extreme limitation of the ability to walk; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B2b(1). The regulations explain that the abilities: to sustain a reasonable walking pace over a sufficient distance to *complete activities of daily living;* to travel without companion assistance; to walk without the use of a walker, two crutches, or two canes; to walk *a block* at a reasonable pace on rough or uneven surfaces; to carry out routine ambulatory activities such as *shopping and banking;* and to climb *a few steps* at a reasonable pace with the use of a single handrail, are all examples of *effective* ambulation. Plaintiff does not point to evidence that such activities are precluded in his case or to other limitations regarding ambulation which are of at least equal severity and duration. Moreover, the Commissioner points to record evidence that plaintiff is able to ambulate without an assistive device. (R. 234, 271).

The regulations define inability to perform fine and gross movements effectively as "an extreme loss of function of both upper extremities; *i.e.,* an impairments(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00B2c. The regulations provide, "To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out *activities of daily living.* Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a *simple meal and feed oneself,* the inability to take care of *personal hygiene,* the inability to *sort and handle* papers or files, and the inability to *place files in a file cabinet* at or above waist level." *Id.* (emphasis added). Plaintiff *does not point to evidence* that such activities or similar activities are precluded or to other limitations regarding fine and gross movements which are of at least equal severity and duration. Moreover, the Commissioner points to evidence that plaintiff's dexterity is preserved (R. 271) and that plaintiff is able to pick up coins, turn a doorknob, and button buttons. (R. 321). Plaintiff does not present record evidence that his condition is equal in severity to Listing 14.09A.

Listing 8.05 might be met if plaintiff shows evidence of dermatitis "with *extensive skin lesions* that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R., Pt. 404, Subpt. P, App.1 § 8.05(emphasis added). Dr. Chernoff opined that plaintiff's condition "probably" equals listing 8.05, and noted that plaintiff has psoriasis with "Piled up scaling lesions on his soles and raw patches on the dorsum of his toes," and "Raw patches on his palms and fingers." (R. 338).

The regulations define "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R., Pt. 404, Subpt. P, App.1 § 8.00C1. The regulation gives examples of extensive skin lesions that result in a very serious limitation, including: "Skin lesions that interfere with the *motion* of [plaintiff's] joints and

that *very seriously* limit [plaintiff's] *use* of more than one extremity;" "Skin lesions on the palms of both hands that *very seriously* limit [plaintiff's] ability to do fine and gross motor movements;" and "Skin lesions on the soles of both feet, the perineum, or both inguinal areas that *very seriously* limit [plaintiff's] ability to ambulate." 20 C.F.R., Pt. 404, Subpt. P, App.1 § 8.00C1(emphases added). Plaintiff does not point to record evidence which establishes the limitations listed or similar limitations of at least equal severity and duration. The court may not read the Listings expansively, and plaintiff has not met his burden to point to record evidence which at least equals the severity of the Listings. The bare opinion of a non-examining physician which does not cite to record evidence containing specific medical findings equal in severity to *all* the criteria of a listing is insufficient. The court finds that plaintiff has not met his burden to show evidence of symptoms, signs, or laboratory findings at least equal in severity and duration to all the criteria of the listings at issue. Therefore, the court finds no error in the Commissioner's step three finding.

## IV. Treating Physician Opinion

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition. *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003). "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [ (1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ (2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); *see also, Soc. Sec. Ruling* (SSR) 96–2p, West's Soc. Sec. Reporting Serv., Rulings 111–15 (Supp.2007).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. *Watkins v. Barnhart,* 350 F.3d 1297, 1300–01 (10th Cir.2003). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* at 1300 (quoting SSR 96–2p). If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record. *Id.* (citing SSR 96–2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

If the treating source opinion is not given controlling weight, the inquiry does not end. *Id.* A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. *Id.* 350 F.3d at 1301. Further,

When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir. 1988).

*Goatcher v. Dep't of Health & Human Serv.,* 52 F.3d 288, 289–90 (10th Cir.1995). "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Watkins,* 350 F.3d at 1301 (citing *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir.1996)) (quoting *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987)).

Plaintiff claims the ALJ erred in rejecting the opinion of his treating physician, Dr. Spencer. Specifically, plaintiff claims

the ALJ failed to make clear why he rejected Dr. Spencer's opinion. Plaintiff explains how, in his view, a proper assessment of the medical evidence and of the medical opinions supports Dr. Spencer's opinions. Finally, plaintiff claims that the ALJ should have at least contacted Dr. Spencer for clarification of the bases for the doctor's opinions. The Commissioner argues that the ALJ properly weighed the physician's opinion and explained reasons for discounting the opinion, and those reasons are supported by substantial evidence in the record as a whole.

■ The court agrees with plaintiff that the ALJ erred in failing to provide a proper rationale for rejecting Dr. Spencer's opinions. In the decision, the ALJ summarized Dr. Spencer's opinion: "claimant, secondary to his overall medical condition, is unable to participate in gainful employment." (R. 45)(citing Exs. 10F, 11F, 12F (R. 309–16)). But, as plaintiff points out, Dr. Spencer stated specific opinions, including that plaintiff must lie down two hours in an eight-hour day, that plaintiff does not have bilateral manual dexterity, that pain is frequently debilitating to plaintiff, and that plaintiff's impairments or treatment would cause him to be absent from work more than three times a month. (R. 313–15).

As the Commissioner argues (Comm'r Br. 16–17)(citing R. 45, 253–54), the ALJ found: (1) that Dr. Spencer's opinion is not supported by the "totality of the medical evidence, as cited previously in this decision, particularly" the orthopedic surgeon's, Dr. Hood's, reports dated April and July, 2001; (2) that the opinion is inconsistent with plaintiff's lack of consistent or ongoing medical treatment; and (3) that the opinion is inconsistent with plaintiff's reported level of functioning. (R. 45)(citing Exs. 5E, 6F pp. 2, 3(R. 171–77, 253, 254)). However, both the Commissioner and the ALJ paint with too broad a brush in this case. While it is true that Dr. Hood's reports do not affirmatively support all of Dr. Spencer's opinions, that is not the standard to be applied in evaluating a treating physician's opinion.

First, the ALJ must determine whether Dr. Spencer's opinion is worthy of controlling weight-whether the opinion is well-supported by medically acceptable *clinical and laboratory diagnostic techniques* and is *"not inconsistent"* with the other substantial evidence in the record. The fact that Dr. Spencer's opinion is not supported by two of Dr. Hood's reports says nothing about whether the opinion *is supported* by medically acceptable clinical and laboratory diagnostic techniques as revealed in Dr. Spencer's reports, treatment notes, or elsewhere in the record evidence. Moreover, that the opinion is *not supported* by Dr. Hood's reports does not mean that it is *inconsistent* with the reports.

Second, even if Dr. Spencer's opinion is determined to be unworthy of controlling weight, the opinion must be evaluated in accordance with the regulatory factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2–6); *see also Goatcher,* 52 F.3d at 290. That Dr. Hood's reports may not support Dr. Spencer's opinion relates only to factors three and four. However, the ALJ did not explain how that relationship detracts from the weight to be given

to Dr. Spencer's opinion. The ALJ did not explain how Dr. Hood's reports regarding plaintiff's *knee replacement* are particularly relevant to Dr. Spencer's opinion that plaintiff must lie down two hours in an eight-hour day, that plaintiff does not have bilateral manual dexterity, that pain is frequently debilitating to plaintiff, or that plaintiff's impairments or treatment would cause him to be absent from work more than three times a month. The ALJ did not explain how Dr. Hood's reports are *inconsistent* with Dr. Spencer's opinion. While the court recognizes it is likely that plaintiff's knee replacement was one factor in Dr. Spencer's opinion, the ALJ did not explain how Dr. Hood's reports regarding the status of that knee replacement are contrary to the opinion reached by Dr. Spencer, or how the evidence reveals that the status of the knee replacement is not a valid basis from which, in conjunction with other bases, Dr. Spencer might reach his opinion.

Similarly, the ALJ failed to explain how the lack of ongoing or consistent medical treatment, and plaintiff's level of functioning contradicts, weighs against, or precludes Dr. Spencer's specific opinions. The mere assertion that plaintiff's "level of functioning" and lack of ongoing or consistent medical treatment are inconsistent with disabling impairments and are therefore not supportive of Dr. Spencer's opinion that plaintiff "is unable to participate in gainful employment," does not recognize that Dr. Spencer's opinion includes several specific limitations. The ALJ's finding is nothing more than a conclusion which begs the question of what weight should be accorded to Dr. Spencer's opinion based upon an analysis of the regulatory factors and relative weighing of the medical opinions of record.

Moreover, even assuming the decision properly decided that Dr. Spencer's opinion should not be given controlling weight,

the ALJ did not explain his weighing of all of the medical opinions in accordance with the regulatory factors and did not explain how he had evaluated the other medical opinions to see if they outweigh the treating source opinions. The ALJ stated that he had "considered all of the objective medical findings of record and has accorded appropriate weight to all treating and examining physicians of record, and particularly those opinions that are supported by the totality of the treatment records, physical and diagnostic findings, etc.," (R. 45), and stated that he had also considered the opinions of the non-examining state agency program physicians and psychologists and had accorded those opinions "appropriate weight." (R. 47). However, the ALJ did not state the relative weight he assigned to each medical opinion, did not state the factors which lead to and support the weight assigned, and did not explain the basis for concluding that the other opinions outweigh the opinions of the treating sources. For example, the ALJ stated that he had "accorded appropriate weight" to the opinions "that are supported by the totality of the treatment records, physical and diagnostic findings, etc.," but he did not identify which opinions he found to be supported by the totality of the evidence, and he did not point to any specific evidence of record supporting this determination. The ALJ's statement is a conclusory finding without explanation for its basis, and is unreviewable without reweighing the evidence. This the court may not do. *White,* 287 F.3d at 905.

Remand is necessary for the Commissioner to properly weigh Dr. Spencer's treating source opinion. On remand, the Commissioner must determine whether all the treating sources' opinions are worthy of controlling weight and explain the reasons for his determination. If the treating sources' opinions are not given controlling weight, the Commissioner must weigh all

of the medical opinions in accordance with the regulatory factors and explain the weight accorded to each opinion. If necessary, as discussed below, the Commissioner may need to recontact the treating sources. If he determines that other medical opinions outweigh the treating sources' opinions, he must explain how he reached that determination. The Commissioner must provide specific, legitimate reasons for his determination.

The court finds it appropriate to comment regarding plaintiff's claim that the ALJ should have recontacted Dr. Spencer. Although it is not clear at this point that Dr. Spencer must be recontacted, it may be necessary on remand, and the court will explain the law applicable in such a case. When reports from a treating source are inadequate to make a finding, that is, when they contain a conflict or ambiguity that must be resolved, do not contain all the necessary information, or do not appear to be based on medically acceptable clinical and laboratory diagnostic techniques, the Commissioner is required to seek clarification from the treating source. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir.2004); *Roberts v. Barnhart,* 36 Fed.Appx. 416, 419 (10th Cir. June 12, 2002); *see also,* SSR 96–5, West's Soc. Sec. Reporting Serv., Rulings 127 (Supp.2007) ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."); *and* 20 C.F.R. § 404.1512(e)(recontact treating source when evidence is inadequate to determine disability). However, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." *White,* 287 F.3d at 908–909 (quoting 20 C.F.R. § 416.912(e)). On remand, the Commissioner must recontact Dr. Spencer if Dr. Spencer's reports are inadequate to make a disability determination as defined above, but not merely if the Commissioner rejects the physician's opinion.

## V. Residual Functional Capacity Assessment

Plaintiff claims the ALJ did not make a function-by-function assessment before determining that plaintiff is "limited to sedentary sit/stand option work activity," (R. 46) and that as a result the ALJ's RFC assessment did not include all limitations caused by plaintiff's impairments and determined by plaintiff's treating physician. (Pl.Br.19–21). The Commissioner acknowledges that the ALJ did not make a function-by-function assessment, but argues that the error does not require remand because the ALJ discussed and explained the RFC assessment and the ALJ's finding that plaintiff is able to do sedentary work includes implicit limitations which are supported by substantial evidence in the record. (Comm'r Br. 8–10)(citing *Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir.2004); and quoting SSR 83–10). In his reply brief, plaintiff asserts that both *Howard* and SSR 83–10 support his claim that the ALJ erred in failing to perform a function-by-function assessment before reaching a conclusion regarding RFC. (Reply 6–7). The court agrees with plaintiff.

In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s). *Id.* at § 404.1545(a). The assessment is to be based upon all relevant evidence in the record and is to include

consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations. *Id.* at § 404.1545. The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. *Id.; see also* § 404.1521 (listing examples of basic work activities which may be affected by impairments).

The Commissioner issued SSR 96–8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp.2007). The Ruling explains that assessment of RFC involves a function-by-function consideration of each work-related ability *before* expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth. *Id.* at 143, 145–46. The Ruling also includes narrative discussion requirements for the RFC assessment. *Id.* at 149. The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. *Id.*

 Here, the ALJ failed to apply the standards required by SSR 96–8p. After concluding at step three that plaintiff's impairment(s) do not meet or equal the severity of a listing, the ALJ recognized the need to make an RFC assessment before proceeding to step four of the sequential evaluation process. (R. 42). In assessing RFC, the ALJ summarized and discussed plaintiff's testimony, other record evidence including medical evidence, and the medical opinions. (R. 42–46). He concluded that plaintiff's allegations regarding the severity of his symptoms and the limitations resulting from his impairments are not credible, and that third-party statements "do not support a finding that claimant's symptoms preclude all types of work activity." (R. 45–46). The ALJ accorded "little weight" to Dr. Spencer's opinion and "appropriate weight" to the opinions of treating, examining, and non-examining medical sources. (R. 45, 47). He concluded that, "Giving claimant every benefit of the doubt, particularly with respect to his orthopedic complaints and his obesity, the undersigned finds that claimant would be limited to sedentary sit/stand option work activity for the period in question." (R. 46). He explained that, with the exception of Dr. Spencer, no treating or examining physician placed any significant limitations on plaintiff. *Id.*

As the Commissioner admits, the ALJ did not make a function-by-function consideration of each work-related activity. Perhaps because he did not address each work-related activity, the ALJ did not describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform, as is required by SSR 96–8p. The ALJ asserted that he had accorded "appropriate weight" to the opinion of each treating, examining, and non-examining medical source, but gave no explanation of what conclusion he had reached regarding each functional work-related activity, what evidence led to the conclusion regarding each function, or how plaintiff is able to sustain each functional activity over the course of a workday.

Even though the ALJ had rejected the opinion of Dr. Spencer, and no other treating or examining physician had provided specific limitations, the ALJ was not free to simply choose whatever limitations he wanted with none but the barest relation to the record evidence. An RFC assessment is for the ALJ to make, yet he must base that assessment upon the record evidence. He may not form his own lay opinion regarding plaintiff's limitations and use that opinion to the exclusion of the medical opinions. *Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir.1996)(ALJ may not substitute his medical judgment for that of a physician); *Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir.1987)(ALJ "can not interpose his own 'medical expertise' over that of a physician"). The ALJ's RFC assessment cannot be saved by an argument that he rejected Dr. Spencer's opinion regarding functional limitations and accepted the opinion of the non-examining state agency physicians. That argument is not supported by the record, for the state agency physicians concluded that plaintiff has the exertional capacity for light work rather than sedentary work, and found no need for alternate standing and sitting as found by the ALJ. (R. 304).

Thus, the court is left with an RFC assessment which is supported by none of the specific limitations stated in the record, and only the barest explanation by the ALJ that he had considered and "accorded appropriate weight" to all of the medical opinions of record. The ALJ did not explain what specific limitations on plaintiff's abilities he assessed, what evidence led him to decide on any particular limitations, or how he had specifically determined which medical opinions to credit. Moreover, the ALJ found a need for plaintiff to alternate sitting and standing but made no comment regarding the required frequency for such alternation. In the circumstances, the ALJ's RFC assessment is unreviewable by the court. The court may not reweigh the evidence, but in this case the only way in which the court might arrive at an RFC assessment is to reweigh the evidence. Remand is necessary for the Commissioner to properly assess plaintiff's RFC so that, if necessary, the court may determine whether the proper legal standard was applied and whether substantial evidence in the record supports the decision.

The court has determined that remand is necessary for the Commissioner to properly evaluate the medical source opinions and to apply the correct legal standard in assessing plaintiff's RFC. Assessment of RFC "must be based on all of the relevant evidence in the case record, such as: ... Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." SSR 96–8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp.2007). When the Commissioner assesses RFC on remand, he must of necessity reevaluate the credibility of plaintiff's allegations of symptoms and the third-party statements regarding plaintiff's symptoms. As the ALJ recognized here, the credibility evaluation must be performed by application of the standards presented in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987), and in 20 C.F.R. §§ 404.1508, 404.1529. (R. 42). Therefore, plaintiff may make his arguments regarding credibility and evaluation of third-party statements on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case to the Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and D.

Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. *Hill v. Smith-Kline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir.2004).

October 25, 2007.